# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| JAMES LANIER BYRD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CV614-106 |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Alleging disability "due to bone spurs and an inability to use his right arm and hand" plaintiff James Byrd seeks judicial review of the Social Security Commissioner's denial of his application for a period of disability and Disability Insurance benefits (DIB). Doc. 16 at 4.[1] That denial followed his exhaustion of administrative remedies, so his claims are now ripe for judicial review.

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at Doc. 14.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Commissioner, Social Security Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *McGriff v. Commissioner, Social Security Admin.*, 2016 WL 3553213 at * 1 (11th Cir. June 30, 2016).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the Administrative Law Judge (ALJ) applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.*

§ 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Commissioner of Social Security Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which []he w[as] insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because [Byrd's] last insured date was December 31, [2014 (tr. 23)], h[is] DIB appeal requires a showing of disability on or before that date." *Moore*, 405 F.3d at 1211.

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Commissioner of Social Security*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Commissioner of Social Security*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II. BACKGROUND

After suffering neck pain for a year, Byrd awoke one day in June 2009 unable to use his right hand. Doc. 16 at 5. A cervical spine MRI showed moderate to severe central and foraminal stenosis with nerve root impingement, as well as C4-5 and 5-6 annular bulging. Tr. 411. On August 4, 2009, a neurosurgeon, Dr. Roy Baker, performed spinal surgery. Tr. 341. Byrd continued working thereafter, though in a "light duty status, basically just answering phones at his office." Tr. 440.

A little more than three months after surgery, Byrd saw Dr. Angela Davis, a family practice physician, for the first time. Tr. 459. It wasn't until a year later, in November 2011, that Byrd complained to Davis of neck stiffness (his previous visits were for colds, fevers, and allergy-based symptoms). Tr. 470. Her examination revealed stiffness and a left paraspinal spasm, but otherwise detected normal upper extremity strength and no motor deficits. Tr. 472.

On March 21, 2012, Byrd again complained to Davis about his neck. Tr. 610. Davis noted that the "problem has not changed," and

4

that Byrd "ha[d] been dealing with" right hand problems "for 2 years." *Id.* She found decreased sensation, strength, and range of motion in his right hand and arm. Tr. 612-13.

Four days later, Davis completed a physical capacities evaluation in which she opined that Byrd may face sitting limitations because of his right hand issues; he could stand or walk 6 out of 8 hours; did not need a sit-stand accommodation; had no need to take unscheduled rest breaks; and could repetitively lift ten pounds. Tr. 512. Davis also noted that Byrd's left hand suffered no repetitive hand-finger action deficiencies, while his right hand precluded fine motor manipulation, handling objects, and pushing or pulling of hand controls (it did not prevent reaching with his entire right arm). Tr. 513. She reported that Byrd suffered pain in his right arm and hand from "previous cervical stenosis" that could reasonably be expected to interfere with concentration, but was unsure if his pain allegations were "consistent with clinical findings." Ultimately, Davis recommended additional functional capacity and neurological evaluations before determining the extent of Byrd's disability. Tr. 513; *see also* tr. 514 (instead of

circling a range of hours she estimated Byrd could work, Davis wrote "needs further evaluation").

Byrd last worked on September 30, 2010. Tr. 47. At the time of his hearing before the ALJ, an average day involved rising at 6:30-7 a.m., dressing, then walking the dog. Tr. 58. After his kids and wife leave the house, Byrd puts clothes in the drier, then folds them. Tr. 59. While the drier runs, he "might unload the dishwasher or vacuum." *Id.* He then goes outside and takes out the trash, cuts the grass (on a riding mower), runs an errand, or "whatever needs to be done." *Id.*

At lunch, Byrd makes himself a sandwich, then spends time in a recliner with a heating pad. Tr. 59. He stays there until the mail comes. *Id.* The afternoon is spent doing much the same -- if cut-the-grass-level housework needs doing, he does it, though his neck and arm issues limit his activities' duration. *Id.* Evening brings home his children and wife, at which point Byrd fixes supper. Tr. 60.

He rarely uses a computer and can only "write enough to write a personal check." Tr. 61. Both typing and writing were essential to

Byrd's previous work. *Id.* Driving was, too. Now, he drives only short distances because he cannot turn his neck to the left. Tr. 65. Byrd can manipulate large, but not small, buttons, has extreme difficulty changing light bulbs, and often has his wife wash his left side because his right arm won't allow such self-care. Tr. 67.

## III. ANALYSIS

Fifty-four when the ALJ denied his DIB application (Tr. 29, 76) and 52 on his alleged onset date (Tr. 21), Byrd has a bachelor's degree in economics (Tr. 44) and past work experience as a case manager for the Bulloch County, Georgia Department of Family and Children Services office. Tr. 49-50. He filed for DIB benefits on October 27, 2010 (Tr. 76) alleging a disability onset of May 2, 2009, which he's since amended to November 1, 2010. Tr. 164. Following administrative denial, he attended and testified at a hearing on January 17, 2013 (Tr. 21) before the ALJ, who later denied his application. Tr. 29.

To Byrd, that's error. In particular, he argues that the ALJ improperly (1) rejected his treating physician's (Davis') opinion; (2) found him able to perform past work; and (3) found him disabled without

consulting a Vocational Expert (VE). Doc. 16 at 4. Each issue is discussed in turn, but, as the Commissioner correctly notes, each is without merit.

A. **Davis' Opinion**

The ALJ specifically gave Davis' opinion "little weight" because he found it "inconsistent with the objective medical evidence of record, including Dr. Davis' own objective findings on March 21, 2012, and the claimant's wide range of daily activities according to his own testimony." Tr. 27. Byrd unsurprisingly thinks the "ALJ is wrong," and points to Davis' March 2012 examination, an exam from a year prior, and MRI results to argue that the evidence supports Davis' opinion (also found in the March 2012 exam notes) that Byrd could not sit and work six out of eight hours, and had concentration-inhibiting pain that would cause him to miss more than five days of work per month. Doc. 16 at 9-10.

"Social Security regulations require the ALJ to consider many factors when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527(d)." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The more well-explained and well-supported an opinion is,

the more weight it receives. 20 C.F.R. § 404.1527(c)(3). And, "the more consistent an opinion is with *the record as a whole*, the more weight" it garners. *Id.* at (c)(4) (emphasis added).

"[T]he opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."[2] *McNamee v. Social Security Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that

---

[3] Importantly, the treating-examining-consulting hierarchy does not mandate that an ALJ always weight a treating physician's opinion more than the others. Good cause exists to deviate from the general weighting rules if:

> 1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012); *McGriff*, 2016 WL 3553213 at * 1.

weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Substantial evidence exists in the record to support the ALJ discounting Davis' opinion regarding Byrd's functional limitations. From the time of his surgery in August 2009, until March 2012, when Davis gave her now-partially discredited (at least by the ALJ) opinion, Byrd at best complained of neck pain and right arm weakness intermittently. And nothing in the record other than Davis' evaluation supports a limitation on sitting, while ample record evidence shows that Byrd could return to work, if not the precise pre-surgery duties he once covered. *See* Tr. 440 (treatment notes from physical therapist less than a month post-op indicating that Byrd had already returned to work "but at light duty status"); tr. 442 (Dr. Steven Novack opining that "dragon" dictation software "[c]ertainly . . . would allow [Byrd] to do his job at

10

regular speed and the right hand discomfort would not be an issue"); tr. 448 (December 17, 2009 notes from Novack indicating that he had no "problem with [Byrd] returning to work," and advising him that he could "take a bus, train or plane" to out-of-town training instead of driving, and to "take a tape recorder" so taking notes wouldn't inhibit training participation); *id.* ("[Byrd] can return to full duty work as a Social Worker at this time."). Discrediting Davis' opinion in the face of such contrary record evidence simply is not error. *See Phillips*, 357 F.3d at 1240–41 (good cause exists to discount treating physician opinions if it is "inconsistent with the record as a whole").[3]

Even if, as Byrd demands, the ALJ fully credited Davis' opinion,[4] it

---

[3] Byrd also argues that his daily activities are not, as the ALJ found, inconsistent with Davis' opinion. Doc. 13-14. Reasonable jurists could disagree on whether the ALJ's conclusion is correct. But that's not the standard of review; substantial evidence is. And because some exists, this Court may not question the ALJ's finding. *Dyer*, 395 F.3d at 1210 ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.")

[4] Despite stating that he gave her opinion "little weight," the ALJ came to very similar RFC conclusions as did Davis. Both found Byrd able to lift ten pounds frequently (a more limiting finding than that of the state agency record reviewer, who opined that Byrd could lift 25 pounds frequently, Tr. 482), stand or walk six out of eight hours, but "only occasionally operate hand controls, reach overhead, reach in all other directions, finger, feel and handle with his right upper extremity." Tr. 27. Indeed, the ALJ, like Davis, gave Byrd "the full benefit of the doubt," and found that he had "significant limitations related to his pain and right upper extremity

still would not support a disability finding. Davis herself repeatedly acknowledged the need for additional evaluation before opining on disability. Tr. 513. And none of her findings indicate disabling limitations. In Davis' opinion, Byrd needs no sit-stand option, can stand or walk for six out of eight hours, and only has sitting limitations insofar as his tasks while sitting involve his right hand. Tr. 512. She clearly indicates right hand-associated limitations (*e.g.*, handling, fine motor manipulation, and pushing and pulling of arm controls), but that information alone wasn't enough for her to formulate any opinion on the number of hours a week Byrd could work, or even whether his pain allegations were consistent with clinical findings. Tr. 513-14.

Even Davis' bare conclusion that Byrd's impairment would result in "more than five" absences from work each month is less damning than it seems because she offers no supporting clinical evidence (nor does the record reveal anything, not even Byrd's own testimony, which could undergird such a limitation). At bottom, substantial evidence supports the ALJ's decision to discount Davis' opinion. This Court therefore

---

weakness/numbness." *Id.*

cannot "substitute [its] judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178.[5]

## B. Steps 4 and 5

At step 4 of his sequential evaluation (where RFC is determined), the ALJ found that Byrd could return to his social worker job because it "is generally . . . sedentary . . . and is skilled in nature," and "requires no more than occasional reaching, handling, fingering, or feeling." Tr. 27 (citing Dictionary of Occupational Titles No. 195.107-010). In so finding, he discounted the hearing testimony of the vocational expert (VE) because

---

[5] Byrd also complains that the ALJ "erred in giving significant weight to the opinion of the [Commissioner's] record reviewer," and "should have ordered a consultative examination." Doc. 16 at 11-12. Neither contention has merit. First, the ALJ never stated that he gave the reviewer's opinion significant weight. He simply acknowledged that it was "essentially consistent with" objective clinical evidence. Tr. 27. That's true. *Compare* Tr. 482-87 (reviewer's RFC assessment), *with* Tr. 511-13 (Davis' physical capacities evaluation). And that consistency permitted the ALJ to credit the reviewer's opinion (not to mention permitted him to discount inconsistent opinions).

The ALJ also did not err by not ordering a consultative examination. Exams need only be ordered if they are "necessary . . . to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984). None was here. After Davis recommended additional evaluations in March 2012 (Tr. 513), more recent records show that Byrd's neck stiffness and muscle weakness abated, and he had no numbness in his extremities (Byrd's contrary assertion notwithstanding, it doesn't take a medical degree to "interpret" the records and arrive at that conclusion). *See* Tr. 602, 607 ("Negative for muscle weakness . . . [or] neck stiffness and weakness."). When viewed in context (the entire record), the additional information and its consistency with other medical opinions gave the ALJ sufficient information to find Byrd not disabled.

his opinion "was based on [the ALJ's] overly restrictive hypothetical question" (he asked the VE to consider a person who could *never*, instead of occasionally, reach, finger, feel, handle, or operate hand controls with his "upper right extremity"). In doing so, complains Byrd, the ALJ "fail[ed] to explain how the limitations he acknowledges," namely, "using a computer slowly and [only] driving short distance," are "consistent with the demands of the position." Doc. 16 at 15.

As noted in footnote two, RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). ALJs must "assess and make a finding about [a claimant's RFC] based on all the relevant medical and other evidence" in the case." *Id.* (citing 20 C.F.R. § 404.1520(e)). The ALJ in this case properly considered Byrd's alleged impairments. He discussed the record as a whole, including Byrd's testimony and daily activities, and found that he was able to perform a range of medium work (though not all). Tr. 29. Put differently, substantial evidence, such as Byrd's post-surgery medical records, shows minimal functional limitations and

thus supports the ALJ's RFC finding.

After that RFC assessment, the ALJ found that Byrd could perform his past relevant work. Tr. 27. Byrd then bore "the burden to show that h[is] limitations prevent h[im] from returning to h[is] past relevant work. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991)." *Davis v. Colvin*, 2016 WL 1263686 at * 3 (M.D. Ala. Mar. 31, 2016). Although he cites typing and driving limitations in attempting to shoulder that load, Byrd ultimately falls short because substantial evidence supports the ALJ's contrary finding. *See* Tr. 435 (letter from Baker, Byrd's surgeon, dated January 6, 2010, stating that Byrd could return to work on January 11, 2010 with no restrictions on his regular duties); Tr. 442 (rehabilitation doctor Novack noting that Byrd can handwrite or type for up to 15 minutes, but then requires a five minute break, and recommending that he consider dictation software which "would allow him to do his job at regular speed and the right hand discomfort would not be an issue"); Tr. 490 (Byrd "discontinued [his caseworker] job," not because of disability, but "due to the program ended, *he was laid off*") (emphasis added).

In the alternative, the ALJ proceeded to step 5, consulted the Medical-Vocational Guidelines, and found that other work existed that Byrd could perform given his age, education, prior work experience, and RFC. *See* Tr. 28; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In doing so, says Byrd, he failed "to make a specific finding as to whether [Byrd's] non-exertional limitations are severe enough to prevent [him] from performing the full-range of work at the exertional level set out in the RFC." Doc. 16 at 16-17. He also, according to Byrd, ignored the VE's testimony that no jobs existed in the national economy for someone with Byrd's limitations. Doc. 16 at 17 (citing Tr. 72-73).

None of that matters, however, because the ALJ correctly found that Byrd could perform his past work. Any error he made in assessing whether alternative employment existed therefore was harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (errors at steps 4 and 5 were harmless because the ALJ found claimant's conditions non-severe at step 2); *Colon ex rel. Colon v. Commissioner of Social Security*, 411 F. App'x 236, 239 (11th Cir. 2011)

(any ALJ error at step 5 was "harmless given that substantial evidence supports that Mr. Colon could perform his former work as he actually performed it").

## IV. CONCLUSION

Because substantial evidence supports the ALJ's conclusion that Byrd is "not disabled," Tr. 29, the Commissioner's decision denying benefits should be affirmed. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

**SO REPORTED AND RECOMMENDED**, this __5th__ day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA