UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| JAMES LANIER BYRD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CV614-106 |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (R&R) advising that the Social Security Commissioner's decision denying benefits be affirmed. Doc. 21.[1] Byrd Objects. Doc. 23. The Commissioner does not.

A.  Standard of Review

After conducting a careful and complete review, a district judge may accept, reject, or modify the R&R. 28 U.S.C. § 636(b)(1); *Williams*

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket (*see* doc. 14).

*v. Wainwright*, 681 F.2d 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)).

## B. Byrd's Objections[2]

Byrd claimed disability "due to bone spurs and an inability to use his right arm and hand." The Administrative Law Judge (ALJ) held Byrd is not disabled under the Social Security Act. The Magistrate Judge (MJ) ruled that the ALJ had properly discredited the medical opinion of treating physician Dr. Angela Davis, declined to order a consultative examination to further develop the record, assessed Byrd's residual functional capacity (RFC), and concluded that Byrd could return to his past work as a social worker or other work in the national

---

[2] The Court adopts the background section from the R&R.

2

economy. Doc. 21. Byrd contends the MJ erred by affirming the ALJ's decision. Doc. 23.

1.   Dr. Davis' Medical Opinion

The MJ found that Dr. Davis was properly accorded "little weight" by the ALJ because her opinion was both internally inconsistent with her own objective findings and with the record as a whole. Doc. 21, p. 8 (citing Tr. 27). Byrd argues that the evidence the MJ relied upon actually bolstered Dr. Davis' opinion and established that "Byrd could not perform essential job duties" of his prior work. Doc. 23, pp. 1-2, 6-7. This argument is without merit.

Following cervical spinal surgery, Byrd was cleared to return to work as a social worker in December 2009 and returned to regular duty work in January 2010. Tr. 26. Dr. Davis then saw Byrd in November 2010 for hypertension and neck pain. Tr. 47-73. Though she observed left paraspinal spasm on palpation of the cervical spine, she also noted normal bilateral upper extremity strength and no motor or sensory deficits. *Id.* Byrd complained of severe, persistent cervical spine pain with radiation throughout his right arm and severe right hand

3

weakness in March 2011. Tr. 623. Though he was noted to have decreased right grip and arm strength and sensitivity, Byrd had "active and pain free range of motion" in his right wrist, elbow, and shoulder. Tr. 623-27. Dr. Davis prescribed back exercises with heat and stretching, aspirin, and Flexeril[3] to address Byrd's "severe" symptoms. Tr. 627. Two months later, Byrd complained of only sporadic, mild muscle spasms in his right hand, Tr. 619, and in December 2011, Byrd was observed to have no muscle weakness, Tr. 616.

In March 2012, radiological imaging revealed normal alignment of C1-6, with spondylitic foraminal narrowing at C3-4 on the right side, and a "less than optimal[ly]" captured cervical MRI revealed cervical muscle spasm and multilevel disc osteophyte complexes. Tr. 595-98. Byrd complained of moderate, constant bilateral posterior neck pain with radiation to the left upper arm and right forearm and right hand. Tr. 610. Dr. Davis opined that Byrd would be unable to sit 6 hours out of an 8-hour day, could stand and walk 6 hours out of an 8-hour day without rest or alternating between postures, could lift up to 10 pounds

---

[3] Flexeril is prescribed to relieve "skeletal muscle spasm of local origin without interfering with muscle function." *Menefee v. Barnhart*, 336 F. Supp. 2d 1175, 1178 n.8 (N.D. Ala. 2004).

repetitively, and would be limited in his ability to handle, push, pull, manipulate, or finger with his right hand. Tr. 512. Dr. Davis noted, however, that she was "unsure" whether Byrd's pain allegations were "consistent with clinical findings" and that further consultative evaluations were needed to determine whether Byrd could work a normal 40-hour workweek. Tr. 513, 514. In June and December of that same year, Dr. Davis observed that Byrd had no muscle weakness, weakness in extremities, or neck stiffness and weakness. Tr. 602, 607.

Byrd testified that on a typical day, he independently dresses himself, walks his dog, runs errands, prepares meals, watches television, and performs household chores including folding laundry, mopping, unloading the dishwasher, vacuuming, taking out the trash, riding a lawnmower, and "whatever [else] needs to be done." Tr. 58-59, 186-88. Byrd sometimes needs help washing his left side and has difficulty turning his neck to drive, has difficulty manipulating small buttons and changing lightbulbs, and can only "write enough to write a personal check." Tr. 61-67.

The MJ correctly held Dr. Davis' opinion internally inconsistent

and at odds with Byrd's own testimony as to his wide range of daily activities. Byrd's complaints of neck pain and right arm weakness were intermittent and demonstrated improvement, if anything. From November 2010, when Byrd complained of "severe" pain and right arm weakness, to March 2012, when Byrd complained of "moderate" pain, to December 2012, when no complaints of stiffness or weakness were observed, the record simply does not support Dr. Davis' extreme opinion that Byrd is unable to perform the requirements of an 8-hour workday or would miss more than 5 days of work each month. Contrary to Byrd's contention, the objective imaging and other medical evidence of record also do not support Dr. Davis' extreme opinion – *no* other medical source ever opined Byrd was totally disabled based on either the objective imaging or their own clinical observations. *See generally* Tr. 262-628.

As the MJ correctly observed, Byrd's admitted daily activities further undermine Dr. Davis' opinion. While "participation in everyday activities of short duration, such as housework or fishing" does not automatically disqualify a claimant from disability, *Lewis v. Callahan*,

125 F.3d 1436, 1441 (11th Cir. 1997), here, Byrd testified that he is able to independently perform these varied activities on a daily basis. Byrd's daily activities simply cannot be used to bolster Dr. Davis' conclusion that he is unable to work.

### 2. Past Work as a Social Worker

The MJ also properly found that Byrd could perform the requirements of his past relevant work. Though Byrd's treating physician initially cleared him to return to work in December 2009 with several suggested accommodations to enable him to complete his job duties, Tr. 446-48, he was cleared for regular work duty by his surgeon *without accommodation* a month later, Tr. 435. Byrd was then able to perform the requirements of his job on "light duty" status for ten months. *See* Tr. 440-45.

While Byrd is correct that the question of disability "does not take the possibility of 'reasonable accommodation' into account," doc. 23 at 2 (quoting *Cleveland v. Pol'y Mgm't Sys. Corp.*, 526 U.S. 795, 803 (1999)), the record supports a finding that he can perform the requirements of his past work as a social worker both as actually performed -- *with*

accommodations -- *and* as generally performed -- *without* accommodations.4 Social workers are required to reach, handle, and finger only occasionally, and are not required to feel. *See* Dictionary of Occupational Titles 195.107-010 (DOT entry for sedentary, skilled work as "caseworker"). Even fully crediting Dr. Davis' opinion that Byrd is incapable of repetitive fine motor manipulation, handling, or pushing and pulling, such a limitation does not preclude him from performing the occasional manipulative requirements of a social worker.5 *Id.*

### 3. Agency Reviewing Physician

The MJ found the agency reviewing physician's opinion to be "essentially consistent with" the objective clinical evidence of record. Doc. 21, n.5.6 The reviewer opined that Byrd could perform medium

---

4 Byrd admitted he left his past work due to being laid off, *not* because of the limitations imposed by his impairments. Tr. 490.

5 Byrd also objects to the MJ's finding that he had the mental ability to work as a social worker. Byrd references the agency consultative psychologist's opinion that he "seems to possess the ability to understand [ ]and remember simple instructions. . . ." Tr. 492; *see* doc. 23, p. 4. However, no medical source has opined Byrd is *limited* to simple, repetitive tasks. An observed capacity to perform simple tasks is not the same thing as a concrete, unambiguously opined *limitation* for the purpose of the RFC assessment. Notably, Byrd does not object to the MJ's finding that the ALJ properly formulated his RFC to exclude any mental functioning limitation; nor has Byrd pointed to evidence that any medical source found him to be so limited.

6 The R&R says the ALJ "never stated that he gave the reviewer's opinion significant weight." Doc. 21, n. 5. In fact, as Byrd correctly notes, the ALJ gave the

work with limited handling, fingering, and feeling in the right hand. *See* Tr. 482-84. Byrd argues that the MJ does not possess the expertise to assess whether the reviewer's opinion was consistent with Byrd's most recent MRI findings. He further argues -- without any citation to evidence in the record -- that the reviewer's opinion may also be inconsistent with later medical evidence. State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR[7] 96-6p. The ALJ was entitled to rely upon the reviewer's opinion as substantial evidence because it is uncontradicted by any other evidence of record.[8]

---

reviewer "great weight." Tr. 27. However, such error is harmless given the ultimate disability finding, and does not otherwise support non-adoption of the otherwise well-supported R&R.

[7] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, though they are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to [SSRs] . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

[8] Notably, Byrd does not cite a single inconsistency between the reviewer's opinion and the record to demonstrate the reviewer's opinion was entitled to less than full weight.

### 4. Consultative Examination

The MJ determined that the ALJ did not err by failing to order a consultative examination. Doc. 21, n. 5. Byrd argues that a single treating note "recommended[ing] a functional capacity evaluation and neurosurgery evaluation to determine the extent of [Byrd's] disability" somehow triggered the ALJ's duty to further develop the record by ordering a consultative examination. Doc. 23 at 5-6 (citing Tr. 613). However, Dr. Davis' uncertainty alone does not create an ambiguity in the record. ALJs have an affirmative duty to develop the record where appropriate. But they are not required to order a consultative examination where the record contains sufficient evidence to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Here, the record is neither incomplete nor ambiguous. It contains ample evidence that Byrd's allegedly disabling pain was abated with

time and conservative treatment. *See* Tr. 623-27 (March 2011 visit, observing "severe" cervical spinal pain and right hand weakness and prescribing a muscle relaxant and aspirin for daily use, physical therapy, heat, and stretching); Tr.620-22 (May 2011 visit, observing no transient weakness and prescribing a muscle relaxant and aspirin for daily use); Tr. 616 (December 2011 visit, observing no muscle or extremity weakness and no extremity numbness and prescribing a aspirin for daily use); Tr. 611-13 (March 2012 visit, observing muscle weakness and spasms and prescribing a muscle relaxant and aspirin for daily use and narcotic pain medication for use only as needed for breakthrough pain); Tr. 606-07 (June 2012 visit, observing no muscle or neck weakness or neck stiffness and prescribing narcotic pain medication for use only as needed for breakthrough pain); Tr. 602 (December 2012 visit, observing no muscle or extremity weakness and no extremity numbness and noting no active pain medications prescribed). There is no requirement to order a consultative examination when the record contains sufficient evidence to make an informed decision, *Wilson*, 179 F.3d at 1278; *Holladay v. Bowen*, 848

F.2d 1206, 1210 (11th Cir. 1988), and that was the case here.

Hence, James Lanier Byrd's Fed. R. Civ. P. 72(b)(2) Objection is **OVERRULED**, the R&R is **ADOPTED, and judgment shall be entered against** him.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of September, 2016.

_____
J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA